IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| YOLANDA R. MIMS, | ) | |
| | ) | |
| PLAINTIFF, | ) | C.A. No. 3:13-CV-2540-MBS-KDW |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| SAM'S EAST, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

Plaintiff Yolanda Mims ("Mims" or "Plaintiff"), filed this action against her employer, Sam's East, Inc. ("Sam's" or "Defendant"), alleging race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* Plaintiff's claims focus on her not being promoted or transferred to other positions and her allegedly disparate treatment in the way she was disciplined. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Defendant's Motion for Summary Judgment. ECF No. 29.  Having considered the Motion; Plaintiff's Response, ECF No. 33; Defendant's Reply, ECF No. 34; and applicable law, the undersigned recommends that Defendant's Motion for Summary Judgment be *granted* and this matter be ended.

I.      Standard of Review

A.  Motions for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth

specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact).  In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002) (Title VII). The court cannot make credibility determinations or weigh the evidence, but the court should

examine uncontradicted and unimpeached evidence offered by the moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. *See id.* at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

B. Proof of Title VII Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may demonstrate a violation of Title VII through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff does not argue she has presented any direct evidence of discrimination, *see* Pl.'s Mem. 9, so the court considers her claims under the burden-shifting framework. Pursuant to this framework, once the plaintiff establishes a prima facie case of a violation of Title VII, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

A plaintiff alleging that she was treated less favorably in promotions because of a protected characteristic must establish a prima facie case by showing that: "(1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination." *Anderson v. Westinghouse Savannah River Co.,* 406 F.3d 248, 268 (4th Cir. 2005). After establishing her prima facie case, a plaintiff who alleges a failure to promote can "prove [the legitimate, nondiscriminatory reason proffered by the defendant was merely] pretext[ual] by showing that [s]he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko v. Colombo Sav. Bank,* 434  F.3d 249, 259 (4th Cir. 2006). In evaluating relative qualifications, the court's analysis must be "based on the criteria that the employer has established as relevant to the position in question." *Id.* The Fourth Circuit has held that when comparing the relative qualifications of two candidates, the plaintiff must make "a strong showing that [her] qualifications are demonstrably superior to the qualifications of the successful employee." *Id.* at 261-62. Further, when "a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." *Id.* at 261.

To make out a prima facie case of disparate treatment, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the job and her performance satisfied her employer's expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside her protected class received more favorable treatment. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). "Liability in a disparate-treatment case depends on whether the protected trait actually motivated the employer's decision." *Young v.*

*United Parcel Serv.,* 135 S. Ct. 1338, 1345 (2015) (quoting *Raytheon Co. v. Hernandez,* 540 U.S. 44, 52 (2003)).

Absent direct evidence proof of retaliation, in order to establish a prima facie case for retaliation under Title VII, a plaintiff must show the following: "(1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action." *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir. 2011) (internal quotation omitted). Further, "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "require[] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. SW. Med. Ctr. v. Nassar*, __ U.S. __, 133 S. Ct. 2517, 2533 (2013).

While intermediate evidentiary burdens shift back and forth, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff. *See Reeves,* 530 U.S. at 146-47 ("The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'") (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993)).

II.    Analysis[1]

---

[1] Unlike those in many employment actions, the facts relevant to Plaintiff's claims do not readily lend themselves to a chronological narrative. Therefore, the undersigned sets out pertinent facts when discussing Plaintiff's claims and Defendant's Motion. In considering this Motion, the court considers all facts in the light most favorable to Plaintiff. According to Defendant's Motion, Plaintiff did not conduct written discovery or take any depositions in this matter, and the discovery period ended in July 2014. As an apparent result, Plaintiff's factual recitation consists of her deposition testimony. Plaintiff's testimony is competent evidence as to events for which she has personal knowledge. However, much of her testimony is speculative in nature, making it inadmissible in considering summary judgment. A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v.*

Plaintiff began working for Sam's in Augusta, Georgia as a part-time cashier in 1995. After transfers to Marietta, Georgia and Myrtle Beach, South Carolina Sam's Clubs, Plaintiff began working at Sam's Columbia, South Carolina location as a Check-Out Supervisor ("COS") in April 2003. Pl.'s Dep. 18-20.[2] Plaintiff became Lead COS, a position she held at all times relevant to this litigation. *Id.* at 21.[3] As Lead COS, Plaintiff's primary responsibility was to ensure the "front end" of the store was adequately staffed and running properly. *Id.* at 21. As Lead COS, her salary was at a "level seven." *Id.* at 22.

In responding to Defendant's Motion for Summary Judgment, Plaintiff identifies the bases of her claim of race discrimination. *See* Pl.'s Mem. 2-3, ECF No. 33. As articulated in her brief and discussed in detail below, the factual bases for Plaintiff's race-discrimination claim include various actions or non-actions by George Turosik ("Turosik"), who was the General Manager at the Columbia Sam's from August 2011 until he was transferred to another Sam's Club. *See id.* Plaintiff references two specific disciplinary incidents—one for having a "negative attitude" and one for failing to hold a cashier accountable. *Id.* Plaintiff also references two positions within the Columbia Sam's for which she applied but did not receive: Technology Team Lead and Accounting Lead. *Id.*[4] To the extent possible, the court considers Plaintiff's claims as identified by her in her responsive memorandum.

---

*Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis*, 53 F.3d at 62.

[2] ECF No. 29-2 contains pages of Plaintiff's deposition relied on by Defendant in its Motion. ECF No. 33-3 contains the full transcript of Plaintiff's deposition as provided by Plaintiff in her response.

[3] As of the time of Defendant's Motion, Plaintiff remained employed by Sam's, presumably in that same position. *See* Def.'s Mem. 17, Pl.'s Dep. 23.

[4] Plaintiff's memorandum characterizes the "negative attitude" discipline as untrue and "just a pretext used by Turosik to prevent [Plaintiff] from moving into other areas of management and learning other aspects of [Sam's] operation." Pl.'s Mem. 3 (referencing her not being transferred to either the Technology Team Lead or Accounting Team Lead positions).

A. Title VII Retaliation Claim

As an initial matter, although Plaintiff's Complaint includes a cause of action for retaliation, she does not refute the portion of Defendant's Motion seeking summary judgment as to that claim in her memorandum. Accordingly, Plaintiff is considered to have abandoned that claim, making summary judgment appropriate as to the Title VII retaliation claim. *See Lee v. Jasper Cnty.*, No. 9:09-1878-SB-BM, 2012 WL 7149678, at *8 (D.S.C. Sept. 6, 2012) (noting undefended claims regarded as abandoned) (citing *Burns v. Air Liquide Am., L.P.*, 515 F. Supp. 2d 748, 759 n.9 (S.D. Tex. 2007)), *report and recommendation adopted*, No. CIV.A. 09-1878, 2013 WL 594890 (D.S.C. Feb. 14, 2013).

Further, considering all facts as set forth by Plaintiff and supported by the record, the undersigned finds Plaintiff cannot establish a prima facie case of retaliation. In addition, no facts presented by Plaintiff could establish the but-for causation she must demonstrate to survive summary judgment on a retaliation claim. *See Nassar*, 133 S. Ct. at 2533.

B. Discrimination Claims

    1) Failure to Transfer

        a. Technology Team Lead (August 2011)

In August 2011, Plaintiff became aware of an open position as Technology Team Lead, which would cover the cell phone department, photo lab department, and electronics. Pl.'s Dep. 42-44. It is undisputed that a transfer from Lead COS to Technology Team Lead would be a lateral move that would include no change in compensation. Pl.'s Dep. 43; Declaration of Assistant Manager Jennifer Montville ("Montville Decl.") ¶ 3, ECF No. 29-6. Plaintiff indicated she had not been among the initial candidates interviewed for the position but approached Montville and expressed interest in it. Pl.'s Dep. at 44. Montville interviewed Plaintiff on August

19, 2011 for the position. Montville Decl. ¶ 3. Montville indicated that, during the interview, Plaintiff made several negative comments that indicated Plaintiff "merely sought to escape her front end Lead COS position rather than being genuinely interested in the Technology Team Lead position." Montville Decl. ¶ 3. Montville also noted prior "less than pleasant interactions" with Plaintiff factored into the decision not to place Plaintiff in the Technology Team Lead position. *Id.*

Montville selected Andrea Cornell (Hispanic female) for the position based on Cornell's "outstanding performance in Tire & Battery, which Ms. Cornell essentially managed, and because of her leadership position." Montville Decl. ¶ 4. Montville also noted Cornell had worked closely with the previous Technology Team Lead. *Id.*

Plaintiff indicated in deposition that, before she was interviewed by Montville for the position, she "had already heard, but it was just rumors, that Andrea already had the position." Pl.'s Dep. 52. She noted she was unsure where the rumors had come from. *Id.* Plaintiff told a superior, Market Manager Mike Thompson, that the position was rumored to have been filled before Plaintiff had been told she was not chosen. *Id.* at 56. Prior to announcing Cornell's selection, Montville met with Plaintiff to notify her of the hiring decision and to give her constructive feedback. Montville Decl. ¶ 5. Montville reminded Plaintiff of some of their prior interactions and indicated she could not count on Plaintiff. *Id.*

When the Technology Team Lead position became available again in 2012, Plaintiff was asked whether she was interested in the position. Plaintiff chose not to interview for it. *Id.* ¶ 6.

b. Failure to Transfer to Accounting Team Lead (October 2011)

Plaintiff also alleges race discrimination based on an October 2011 opening for an Accounting Team Lead position. Member Service Assistant Manager Krystal Smith-Brown considered with whom to fill the position after it "became vacant unexpectedly and immediately

8

in September 2011." Smith-Brown Decl. ¶ 3, ECF No. 29-7. Plaintiff testified that Turosik had advised her that the Accounting Team Lead position would be coming open and that "he felt he knew [Plaintiff] was interested in that position[.]" Pl.'s Dep. 61-62. Plaintiff acknowledged that Smith-Brown was in charge of doing interviews and hiring for that position. Pl.'s Dep. 64. Plaintiff indicated she was unsure whether that position would pay at the same grade or higher than her current Lead COS position, but she noted it "would still be a leadership position." *Id.* Smith-Brown indicated the Accounting Team Lead "would have been a lateral position and a pay grade below that of [Plaintiff's] Lead COS position." Smith-Brown Decl. ¶ 3.

Smith-Brown met with Plaintiff and explained she had decided not to interview Plaintiff for the Accounting Team Lead position because Plaintiff was one of the least qualified candidates. *Id.* ¶ 4. Smith-Brown interviewed three employees for the position and requested that Turosik interview an assistant manager at another Sam's, Anna Daniel (Caucasian female). Daniel had trained Smith-Brown when Smith-Brown had begun working in accounting. Daniel had managerial experience and had been a team lead in several other departments. *Id.* Smith-Brown decided to hire Daniel because "she was the most qualified candidate for the position, she had the most experience, and she had the most seniority." *Id.*

c.   Analysis

Defendant argues Plaintiff cannot establish her prima facie case of race discrimination as to the Technology Team Lead or Accounting Lead positions. The undersigned agrees. A plaintiff alleging that she was treated less favorably in promotions because of a protected characteristic must establish a prima facie case by showing that: "(1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination." *Anderson*, 406 F.3d at 268.

Nothing in the facts presented gives rise to any inference of race discrimination. Plaintiff is a member of a protected class and applied for the positions. Defendant does not argue that Plaintiff would be unqualified for the positions. However, the decision-makers considered the candidates and made business decisions as to whom to hire for the positions.

As to the Technology Team position, decision-maker Montville considered the qualifications of Plaintiff and Cornell and determined Cornell was right for the position based on her prior performance and experience. For the Accounting Team Lead position, Smith-Brown considered qualifications and hired the most qualified candidate. Plaintiff complains that she did not even get an interview, but the record evidence indicates Smith-Brown was knowledgeable about Plaintiff's experience, and Smith-Brown explained to Plaintiff she was looking for candidates with more recent accounting experience than Plaintiff had. Smith-Brown Decl. ¶ 3.

Plaintiff has not established a prima facia case of race discrimination as to the Technology Team Lead or Accounting Lead positions. Defendant's Motion should be granted as to these claims.

In any event, assuming Plaintiff has set forth a prima facie case, she has not set forth evidence to overcome Defendant's stated business reasons for not hiring Plaintiff for those positions. Defendant explains that Plaintiff was not chosen for the Technology Team Lead position based on remarks made during the interview that made Montville believe Plaintiff was more interested in moving out of the Lead COS position than being genuinely interested in the Technology Team Lead position. Montville Decl. ¶ 3. Further, Montville noted Cornell had relevant experience. *Id.* at 4. Plaintiff conceded she had no knowledge of Cornell's qualifications other than knowing her prior positions within the Columbia Sam's. Pl.'s Dep. 51.

Regarding the Accounting Lead Position, Smith-Brown testified she chose Daniel, who was the most-qualified candidate. Plaintiff acknowledged that Daniel previously had worked in

accounting, but noted that she (Plaintiff) had, as well. Pl.'s Dep. 66. Plaintiff indicated she was otherwise unsure of Daniel's qualifications. Pl.'s Dep. 70. Plaintiff makes much of the fact that Smith-Brown never interviewed her but just told her the decision had been made to go with Daniel. *See* Pl.'s Mem. 3. However, in this instance, Smith-Brown's decision not to formally interview Plaintiff, whose work background she knew, when a hiring decision had already been made does not provide evidence of intentional racial-based discrimination. Plaintiff has cited no case law to the contrary.

In her brief, Plaintiff submits Defendant has failed to meet its burden of establishing legitimate, nondiscriminatory reasons for its decisions because Defendant "has not produced any documentary evidence, applications or personnel files to show that other candidates, other than possibly [Daniel] who were ultimately hired over [Plaintiff] were, in fact, 'more qualified.'" Pl.'s Mem. 7. As Defendant notes in Reply, Plaintiff overstates the defense burden in the pretext stage. Def.'s Reply 3. *See Heiko*, 434 F.3d at 259 (noting relative employee qualifications are valid, nondiscriminatory bases for any adverse employment decision).

Once an employer has given a legitimate, nondiscriminatory reason for its questioned action, it is not the court's province to determine whether "the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [alleged adverse employment action against the plaintiff]." *DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks omitted). Stated another way, Defendant is not required at this juncture to persuade the court that the reasons it proffers are based in fact. It was not Defendant's burden to provide the back-up documentation Plaintiff suggests is lacking. Rather, it is *Plaintiff* who has the burden of presenting competent evidence to overcome these legitimate, non-discriminatory reasons for Defendant's hiring decisions by showing those reasons were merely pretextual and that the "real reason" Plaintiff was not chosen for the Technology Team Lead or Accounting

Team Lead positions was because she was African American. "In a failure to promote case, the plaintiff must establish that she was the better qualified candidate for the position sought." *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

Plaintiff simply has not satisfied her burden. Plaintiff's claim of racial discrimination in violation of Title VII as related to failure-to-promote/transfer claims should be dismissed as a matter of law. Even if considered as part of Plaintiff's more general race-discrimination claims, summary judgment is appropriate as to her claims regarding transfers to other positions. Plaintiff has not created an inference of racial discrimination.

2) Disciplinary Actions (Verbal Coachings)

 a. Background

  i. October 2011 Verbal Coaching (Cashier Accountability)

Plaintiff also bases her race-discrimination-related claim on two verbal warnings (called "Verbal Coachings" in Sam's parlance)—one received on October 11, 2011 for failing to hold a cashier "accountable" for a September 2011 cash shortage, ECF No. 29-2 at 54-55; the other received on April 4, 2012 for "speaking negatively about 'the management staff . . .' to another associate;" ECF No. 29-2 at 57-58.[5] *See* Pl.'s Mem. 2-3.

Sam's has several different levels for Coachings: Verbal Coaching (the first step, which has no effect on compensation or other terms or conditions of employment), Written Coaching, and Decision-Making Coaching (the final step before termination). If an Associate receives a Verbal Coaching and does not receive any other Coachings for 12 months, the Verbal Coaching expires and is no longer active. Pl.'s Dep. 34-36.

---

[5] Although the print-out concerning the "Verbal Coachings" list them as "First Written" Coaching, ECF No. 29-2 at 54, 58, Defendant explains that the terminology subsequently changed, *see id.*; Def.'s Mem. 6 n.8.

On September 12, 2011, Members Services Assistant Manager Smith-Brown (African-American) emailed Plaintiff instructing her to discipline two cashiers ("Brenda and Christian") who had cash shortages. Pl.'s Dep. 114; Smith-Brown Decl. ¶ 2; ECF No. 29-2 at 53 (copy of email attached as exhibit to Pl.'s Dep.). Plaintiff disciplined Brenda but never disciplined Christian. In her deposition, Plaintiff explained that she did not discipline Christian because he was "transferred or something" and she never met with him because their schedules "were not working together[.]" Pl.'s Dep. 115. Because Plaintiff failed to timely discipline one of the cashiers in the three weeks following Smith-Brown's email, on October 6, 2011 Smith-Brown issued a Verbal Coaching to Plaintiff for failing to timely follow her instructions. Smith-Brown Decl. ¶ 2. Plaintiff felt the Verbal Coaching was unfair because others could have disciplined Christian. Pl.'s Dep. 115-16. She also claimed the Verbal Coaching was not timely. *Id.* at 118-19. Plaintiff advised Turosik of her disagreement with the Verbal Coaching. *Id.* at 116. In February 2012 management removed this Verbal Coaching from her file because the Coaching had not been delivered in a timely manner. *Id.* at 118-120, ECF No. 29-2 at 55 (last entry noting the Coaching was "Cancelled").

### ii.   April 4, 2012 Verbal Coaching ("Negativity")

In her declaration, Assistant Manager Smith-Brown states that, by March 2012, she and Turosik had learned that Plaintiff was sharing with her subordinates negative opinions about management, in particular her view that there was a general lack of managerial support for the Front-End, which included cashiers. Smith-Brown Decl. ¶ 5. In March 2012, Smith-Brown and Turosik met[6] with Plaintiff to "discuss expectations." *Id.* ¶ 6. Smith-Brown and Turosik expected Plaintiff to learn to communicate in a respectful way when an issue arose instead of becoming

---

[6] The March 2012 meeting is characterized by Smith-Brown as providing a "warning." Smith-Brown Decl. ¶ 8. Nothing in the record suggests this meeting was considered any type of "coaching" or official discipline under Defendant's system.

upset and behaving inappropriately. *Id.* ¶ 5.  In the March 2012 meeting, Turosik instructed Plaintiff to not speak negatively about management to subordinate employees and to instead address her concerns directly with management to reach a resolution. Turosik and Smith-Brown discussed with Plaintiff how, as a leader, it was important for Plaintiff to maintain a professional atmosphere. Turosik and Smith-Brown discussed with Plaintiff the fact that Plaintiff was welcome to discuss any issues at any time with management, but that they expected Plaintiff to be professional rather than disruptive. Turosik cautioned Plaintiff that, if she violated his directive and made negative comments to her subordinates about management, he would hold her accountable. Turosik also talked to Plaintiff about wanting her to cultivate a positive and exciting work environment for her Front-End Associates. *Id.* ¶ 6.

On April 3, 2012, Fresh Manager Michael Travelstead ("Travelstead") overheard Plaintiff telling one of her subordinates, COS Lashay Lawyer, that management staff did not answer level calls (*i.e.*, calls to managers for assistance) and that management did not support the Front-End. Smith-Brown Decl. ¶ 8. On April 4, 2012, Travelstead and Smith-Brown held Plaintiff accountable by issuing her a Verbal Coaching. ECF No. 29-2 at 57-58; Smith-Brown Decl. ¶ 8. The Verbal Coaching given by Travelstead and witnessed by Smith-Brown provides in pertinent part:

> **Observations of Associate's Behavior and/or Performance**:
> On April 03 2012 [Plaintiff] made a level call to the front end. About a minute later another COS called a level call. I was in the back of the club. The other manager was on a conference call and training a new associate. I responded by coming to the front and helping them out. After the level call was over, I [Travelstead] heard [Plaintiff] speaking negatively about "the management staff not answering level calls and that we need to support them." She said this comment to another associate.
> **Impact of Associate's Behavior**:
> We can't except (sic) an associate speaking negatively about Management staff in the building. This issue creates a negative environment and [Plaintiff] has been spoken to by The club Manager and the Member service ast manager in the past.
> **Behavior Expected of Associate**:

> Don't continue to create a hostile environment in the club. Speaking negatively about a[n] issue or situation that you have concerns with please going forward go directly to the source and communicate in a respectful manner to resolve the situation.

ECF No. 29-2 at 57.

Smith-Brown testifies that, during the meeting, Plaintiff admitted to both Travelstead and Smith-Brown that she made the remarks in question. Smith-Brown Decl. ¶ 8.

In her deposition, Plaintiff does not dispute that Travelstead heard her make comments to Lawyer on April 3, 2012; she provides her version of that interaction. Pl.'s Dep. 104. Plaintiff explained that she made a level call and then paged Travelstead by name. She noted other managers were there, but none had answered the level call. *Id.* Plaintiff indicated Travelstead arrived at the front to assist about 20 minutes after having been paged and was "nasty" to her. *Id.* Plaintiff said Lawyer asked her why they "had to go through all of this," and Plaintiff responded that she was unsure. Plaintiff explained that she told Lawyer,

> Let's just do what we got to do. We know what we got to do. We know our supervisor, regardless if managers respond or not, we got to take care of these members (customers) and associates. That's what we got to do. We can't wait until they decide to come up here and want to help us. We know what's in our control. Let's do what we got to do. That's what we got to do.

Pl.'s Dep. 104-05; *see also* Pl.'s Dep. 130. Plaintiff reiterated that during the time Turosik was manager the cashiers received "no assistance" from the "management staff." Pl.'s Dep. 105.

Plaintiff submits that the comments she made to Lawyer were inappropriately considered negative. Pl.'s Dep. 130. Plaintiff noted she had advised Turosik that she did feel like the front end "don't get any support." *Id.* Plaintiff noted if one of her cashiers or COSs came to her with concerns about not receiving enough management support she is "going to talk to them and have meetings or whatever," and noted they "have had discussions in our COS meeting that we don't get support." *Id.* at 131.

On April 10, 2012, Plaintiff asked Defendant's Market Human Resources Manager, Suzanne Holliday ("Holliday"), to review the Verbal Coaching given by Travelstead and Smith-Brown. Holliday Decl. ¶ 9, ECF No. 29-4. Holliday upheld the Verbal Coaching, "particularly given that Mr. Turosik and Ms. Smith-Brown had previously warned [Plaintiff] that she would be coached if she failed to comply with their reasonable expectations that she not make negative remarks about management to her subordinates and instead address her concerns with management in order to reach a resolution." *Id.* Holliday urged Plaintiff to use the Verbal Coaching as a "teachable moment and reminded her that this was an opportunity for her to create a positive, exciting work environment for her Associates on the Front-End." *Id.*

Plaintiff noted that she still believed the February 2012 Verbal Coaching should have been lifted. Pl.'s Dep. 132. Plaintiff also includes an email sent from Lawyer to Turosik on June 5, 2012, in which Lawyer told Turosik she had already provided a statement regarding the events of April 3, 2012. ECF No. 33-1. Lawyer stated to Turosik that they had spoken several times and that he "tried to make it seem as if I was a lier (sic) so I decided to stay out of the situation." *Id.*

In her deposition, Plaintiff identified several other managers who had also made negative comments about management—Randa Lee Williams (Caucasian), Brown-Smith (African American), Denise Jones (African American), and Byron Johnson (Caucasian). Pl.'s Dep. 148-49. Plaintiff has no knowledge of whether those individuals were coached, and Plaintiff did not report their negative comments to management. *Id.* at 149.

  b.  Analysis

Defendant argues summary judgment is appropriate because Plaintiff cannot make out a prima facie case of disparate treatment here. To do so, she must show the following: (1) she is a member of a protected class; (2) she was qualified for the job and her performance satisfied her employer's expectations; (3) she suffered an adverse employment action; and (4) similarly

16

situated employees outside her protected class received more favorable treatment. *See, e.g., Prince-Garrison v. Md. Dept. of Health and Mental Hygiene*, 317 F. App'x 351, 353 (4th Cir. 2009) (*per curium*); *see also Coleman*, 626 F.3d at 190.

The first element is unchallenged. Defendant argues Plaintiff cannot satisfy the second element because the reasons for the coachings themselves—failing to hold a cashier accountable and ignoring instructions to refrain from making negative comments about management to subordinates—indicate unsatisfactory job performance. Def.'s Mem. 13. Plaintiff disagrees, noting she remains employed by Defendant and has been routinely promoted. Pl.'s Mem. 6 (citing Def.'s Mem. 2, 9). Plaintiff also spends several pages of her seven-page memorandum arguing that she does not have a negative attitude and "is, in fact, not negative[.]" *Id.* at 2-3. As support, Plaintiff argues that in her more than 20 years of service with Defendant she has never had another allegation or disciplinary action taken against her for a "'negative attitude.'" *Id.* at 2. Plaintiff attributes the discipline concerning her so-called negative attitude to Turosik. *Id.* at 2-3. Plaintiff submits that it is "doubtful, and at least a genuine issue of material fact, as to whether [Plaintiff] could have remained employed with Defendant for twenty (20) years, much less received numerous pay raises and promotions, if she truly had a 'negative attitude.'" *Id.*

The court notes that Smith-Brown—not Turosik—delivered the October 2011 Verbal Coaching regarding failing to hold a cashier accountable and that Travelstead and Smith-Brown—not Turosik—delivered the April 2012 Verbal Coaching concerning her attitude. However, Turosik and Smith-Brown met with Plaintiff in March 2012 to discuss the same subject matter. For purposes of this prima facie analysis, then, the court considers Turosik a decision-maker of sorts as to the April 2012 Verbal Coaching.

Plaintiff attempts to raise an issue of fact regarding the April 2012 Verbal Coaching by arguing she is not negative. However, in determining whether an employee has met an

employer's legitimate job expectations, it is the *employer's* perception that is relevant, not the employee's self-assessment. *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)). "The relevant time to evaluate [ ] an employee's performance is at the time of the adverse action." *Wells v. Briggs Constr. Equip. Inc.*, C/A No. 3:08-3634-JFA-PJG, 2010 WL 2991673, at *4 (D.S.C. May 12, 2010) (citing *Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005)), *adopted,* 2010 WL 2991681 (Jul. 28, 2010). Regardless of whether Plaintiff was considered to have a "negative attitude" at other times, management (Turosik, Smith-Brown, and Travelstead) perceived Plaintiff as making negative comments to subordinates.

Summary judgment could be granted for Plaintiff's failure to satisfy the second element of her prima facie case. Construing all facts and appropriate inferences in Plaintiff's favor, the court finds it appropriate to assume, *arguendo*, that Plaintiff could satisfy that element.

The undersigned agrees with Defendant that Plaintiff cannot satisfy the third element because Plaintiff has suffered no adverse employment action. "An adverse employment action is a discriminatory act which 'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375-76 (4th Cir. 2004) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001) (internal quotation marks omitted). A Verbal Coaching does not constitute an adverse employment action. *See, e.g., Dawson v. United States*, 549 F. Supp. 2d 736, 742 (D.S.C. 2008) (finding poor performance reviews and written reprimands did not constitute adverse employment actions).

The October 2011 Verbal Coaching was later removed from Plaintiff's employee records so could not be an adverse employment action. In discussing the October 2011 Verbal Coaching, Plaintiff argues that Defendant "fails to explain [] that the cashier in question is another plaintiff with a claim against Defendant, Tyisha Brown[.]" Pl.'s Mem. 3. As noted by Defendant in reply,

this assertion is unsupported by any record evidence, including Plaintiff's deposition and the written documentation provided by Defendant. Based on the deposition pages cited by Plaintiff, she seems to reference some of her more general deposition testimony in which she describes having been told by others, including Smith-Brown, that Turosik planned to "set [her] up" or "hem [her] up" had she taken the Accounting Team Lead position. Pl.'s Dep. 76-82. In discussing this, Plaintiff references a time cashier "Tyisha" came up short on her register. *Id.* at 80. As discussed above, Plaintiff was never transferred to the Accounting Team Lead position; it was filled with Daniel, whom management found to be more qualified. Further, Plaintiff testified that she was never held accountable for Tyisha's cash shortage or any other referenced cash shortage in her continued position as Lead COS. *Id.* at 80-81. Plaintiff's more general argument that Turosik planned to "set her up" is speculative and could not be considered an adverse employment action as it related to a position in which she never worked.

Plaintiff argues she testified numerous times in her deposition that "she was looked over for two (2) lateral transfers in which she was interested in other departments and received coachings which were either just wrong or spurious at best." Pl.'s Mem. 6. She also submits she suffered an adverse employment action because she was "required to take off <u>many</u> personal days, sick leave days or leave of absence (LOA) days due to the medical issues and symptoms she endured as a result of Turosik's discriminatory animus." *Id.* (emphasis in original). Plaintiff has testified that during the time Turosik was manager of the Columbia Sam's, she endured medical issues such as headaches, stress, and anxiety. *See* Pl.'s Mem. 2, Pl.'s Dep. 14-15. Plaintiff has not, however, provided any cogent argument or relevant legal authority explaining how her alleged medical issues would be considered an "adverse employment action."  Plaintiff has offered no evidence that these medical issues or her need to take leave because of the issues impacted the type of personnel decisions considered to be adverse actions. Plaintiff's general

citation to *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981), does nothing to change this result. In that case, the court was considering what constituted an adverse employment action in a class-action matter and noted "personnel actions" as to "what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Id.* The court noted it was providing no general test for deciding what would be considered an adverse employment decision. *Id.* The decision's listing of "granting leave" as a potential "personnel action" has no applicability here. Plaintiff has not established this element of her prima facie case.

Finally, Plaintiff has not provided competent evidence of similarly situated employees outside her class who received more favorable treatment. Plaintiff's deposition testimony that various colleagues were treated differently is far from specific enough to support this element. For example, Plaintiff admits she has no personal information or knowledge concerning the personnel records of other management she indicates she has heard making negative comments in the workplace. Pl.'s Dep. 148-49. *See Ward v. City of N. Myrtle Beach*, 457 F. Supp. 2d 625, 643 (D.S.C. 2006) (noting requirement of establishing "other employees" were similarly situated in all relevant respects; that they "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (internal citations omitted). Plaintiff cannot establish a prima facie case as to this racial-discrimination claim, making summary judgment appropriate.

Contrary to Plaintiff's argument, *see* Pl.'s Mem. 6-7, the burden of providing details regarding the comparators who were treated differently is on *Plaintiff*, not Defendant. *See, e.g., Coleman*, 626 F.3d at 190 (noting burden of establishing prima facie case of race discrimination is on plaintiff). Plaintiff submits Defendant has not provided affidavits or personnel files

showing other associates were disciplined for the same reasons as Plaintiff. Pl.'s Mem. 6. She suggests that, "[w]ith more than a hundred employees, it is doubtful there were no other employees whose attitude could not, at some point, be deemed 'negative' or making comments about the performance of management." *Id.* at 6-7. Plaintiff misapprehends her burden of proof. Summary judgment is appropriate as Plaintiff has not established her prima case.

In any event, assuming Plaintiff has set forth a prima facie case, she has not set forth evidence to overcome Defendant's stated business reasons for issuing the February 2012 Verbal Coaching.[7] Smith-Brown explained the coaching was issued based on specific information and that Plaintiff previously had been warned about negativity. Smith-Brown Decl. ¶¶ 5-8.

In her brief, Plaintiff again submits Defendant has failed to meet its burden of establishing legitimate, nondiscriminatory reasons for its decisions, although she does not focus this portion of her brief on the Verbal Coaching matter. Pl.'s Mem. 7 (referencing hiring decisions and qualifications). Again, Plaintiff misstates Defendant's responsibility at this stage.

Once an employer has given a legitimate, nondiscriminatory reason for its questioned action, it is not the court's province to determine whether "the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [alleged adverse action against plaintiff]." *DeJarnette,* 133 F.3d at 299 (internal quotation marks omitted). In other words, Defendant is not required at this juncture to persuade the court that the reasons it proffers are based in fact. It was not Defendant's burden to provide the back-up documentation Plaintiff suggests is lacking. Rather, it is *Plaintiff* who has the burden of presenting competent evidence to overcome these legitimate, non-discriminatory reasons for Defendant's disciplinary decisions by showing those reasons were merely pretextual and that the "real reason" Plaintiff was disciplined

---

[7] The October 2011 Verbal Coaching has been cancelled. *See* ECF No. 29-2 at 55. In addition, Plaintiff does not dispute that she did not discipline one cashier despite orders to do so. She could not establish pretext as to this coaching.

was because she was African American. Plaintiff has not satisfied this burden. Summary judgment is appropriate.

Finally, the court notes that Plaintiff's brief includes much general argument regarding Turosik and his allegedly discriminatory treatment of Plaintiff and others. However, Plaintiff has not pleaded or established any viable cause of action against Defendant based on Turosik's actions or inactions. Further, in this Report and Recommendation, the undersigned has discussed each claim Plaintiff included in the charge filed with the Equal Employment Opportunity Commission ("EEOC"). ECF No. 29-5 (charge identifying her non-selection for Technology Team Lead and Accounting Team Lead and the October 2011 and April 2012 Verbal Coachings). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans*, 80 F.3d at 963-64. To the extent Plaintiff were to now raise additional claims as part of this litigation, they are barred from judicial review.

Summary judgment as to all claims is appropriate.

III.     Conclusion and Recommendation

For the reasons set forth herein, it is recommended that Defendant's Motion for Summary Judgment be granted and this matter be ended.

IT IS SO RECOMMENDED.

May 19, 2015                                             Kaymani D. West
Florence, South Carolina                              United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**